**O**

# United States District Court
# Central District of California

| | |
|---|---|
| ARROYO ESCONDIDO, LLC,<br><br>Plaintiff,<br><br>v.<br><br>BALMORAL FARMS, INC. et al.,<br><br>Defendants. | Case No: 2:19-cv-08464-ODW (DFMx)<br><br>**ORDER DENYING PLAINTIFF'S REQUEST FOR A TEMPORARY RESTRAINING ORDER [16]** |

## I. INTRODUCTION

On October 1, 2019, Plaintiff Arroyo Escondido, LLC filed suit against Defendants Balmoral Farms, Inc. ("Balmoral"), Traci Brooks, and Carleton Brooks. (*See* Compl., ECF No. 1.) Presently before the Court is Plaintiff's Request for a Temporary Restraining Order ("TRO") to take measurements of the sport horse ("New Moon"). (TRO 1, ECF No. 16.) For the reasons discussed below, the Court **DENIES** the TRO.

## II. BACKGROUND

On or about April 15, 2018, Plaintiff through its managing member Dr. Christi Payan ("Payan") purchased New Moon from Defendant Balmoral for $190,000 for high-level equestrian competition. (Compl. ¶ 9.) Payan involved Peter Pletcher ("Pletcher") his trainer in negotiating the terms of the agreement with Defendants.

(Compl. ¶ 10.) Pletcher informed Defendants that Plaintiff sought all medical records, competition records, and other information relevant to New Moon's quality and stability for its intended purpose. (Compl. ¶ 10.) Defendants failed to disclose all the relevant information but represented to Plaintiff that New Moon was fit and suitable for its intended purpose as a competitive sport horse. (Compl. ¶¶ 10, 11.)

Plaintiff alleges that once Payan took possession of New Moon, Payan entered New Moon in jumping competitions but New Moon refused jumps and bucked the rider after going over jumps. (Compl. ¶ 13.) Plaintiff alleges that such behavior is highly unusual for sport horses and New Moon had a history of refusing jumps and bucking prior to the sale. (Compl. ¶¶ 13, 14.) Plaintiff files suit on the grounds that Defendants sold New Moon without disclosing this defect and falsely advertising that New Moon was younger and smaller. (Compl. ¶ 14.)

Presently, Plaintiff files a TRO to inspect and examine New Moon and an order restraining Defendants from harming or relocating the horse in any way pending trial. (TRO 4.) Plaintiff argues that New Moon could die of starvation causing it to lose key evidence of horse measurements to substantiate its claim. (TRO 8.)

### III. LEGAL STANDARD

"An application for a temporary restraining order involves the invocation of a drastic remedy which a court of equity ordinarily does not grant, unless a very strong showing is made of a necessity and desirability of such action." *Youngstown Sheet & Tube Co. v. Sawyer*, 103 F. Supp. 978, 980 (D.D.C. 1952). The standard for issuing a temporary restraining order is "substantially identical" to that for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Pursuant to Federal Rule of Civil Procedure 65, a court may grant preliminary injunctive relief to prevent "immediate and irreparable injury." Fed. R. Civ. P. 65(b). To obtain this relief, a plaintiff must make a clear showing that (1) "he is likely to succeed on the merits"; (2) "he is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in his favor"; and

(4) "an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). The "clear showing" requirement is particularly strong when a party seeks a TRO. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

### IV. DISCUSSION

Even where there is a strong likelihood of success on the merits, plaintiffs must demonstrate that irreparable injury is likely in the absence of an injunction. *Winters*, 555 U.S. at 22. Here, Plaintiff alleges seven claims in the Complaint all premised on the assertion that Defendants engaged in fraud by misrepresenting New Moon's abilities and size. (TRO 6.) However, Plaintiff fails to cite any case law indicating its likelihood of success on the merits and thus, fails to meet its burden. However, even if Plaintiff had met its burden and could demonstrate a likelihood of success on the merits, the Court does not find immediate or irreparable harm.

In the context of evaluating whether to grant a temporary restraining order, harm is irreparable where it extends beyond pecuniary injury. *See Regents of Univ. of Cal. v. Am. Broad. Cos., Inc.*, 747 F.2d 511, 519 (9th Cir. 1984) ("[A] party is not entitled to a preliminary injunction unless he or she can demonstrate more than simply damages of a pecuniary nature."); *but see Herb Reed Enters., LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) ("Evidence of loss of control over business reputation and damage to goodwill could constitute irreparable harm."). "[P]laintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The [temporary restraining order] must be the *only way* of protecting the plaintiff from the harm." *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992).

Here, Plaintiff requests the Court grant its request for a temporary restraining order on two grounds; First, Plaintiff asserts that it needs to immediately inspect and measure the horse to prevent destruction of valuable measurements in the event that

New Moon's musculoskeletal system is impacted or in the event New Moon dies. (TRO 7.) Second, Plaintiff claims that it cannot renew its mortality insurance on New Moon without current measurements and if New Moon were to die before it renewed its insurance, Plaintiff would suffer a loss. (Decl. of Dr. Christi Payan ("Payan Decl.") ¶ 11, ECF No. 16-3.)

Payan declares that Balmoral has "threatened to mistreat this horse by starving the horse unless Plaintiff relents in this case by taking the horse back from Balmoral." (Payan Decl. ¶ 11.) However, the Court finds suspect the instant request as Defendants have been in possession of New Moon since March of 2019, Plaintiff lost coverage of its life insurance on New Moon in August 2019, and Plaintiff filed this case in October 2019. (TRO 2–3; Payan Decl. Ex. B ("Life Insurance Coverage"), ECF No. 16-5.) Since eight months have passed since Defendants repossessed New Moon and no harm has occurred to it, and given that Plaintiff fails to articulate any specific or current reason why New Moon will become sick or die, the Court finds no immediate or irreparable harm. Furthermore, from the email exchange between counsel for Plaintiff and Defendants it is apparent that there is no evidence that New Moon will come to immediate harm apart from normal risk of animal sickness of mortality. (Declaration of David Yoshida Ex. C ("Email Chain"), ECF No. 16-9.)[1]

On balance, the Court finds the *Winter* factors do not weigh in favor of granting a temporary restraining order. Accordingly, the Court **DENIES** Plaintiff's request for a TRO.

Furthermore, from the email exchange, it is apparent that Plaintiff's request is the proper subject of a discovery motion rather than a temporary restraining order.

---

[1] Defendants' Counsel "You could have had Dr. Smith available or certainly change his schedule for today if you were really concerned about the welfare of the pony. But that's not the case. So it's only on your time line." (Email Chain 2.)

Plaintiff's Counsel, "If the pony dies, which you know it can, we lose irreplaceable evidence . . .." (Email Chain 3.) Defendants' Counsel "The only evidence you lose, assuming Neon was to die, which is not probable . . .." (Email Chain 3.)

Parties should file a properly noticed discovery motion to resolve their scheduling conflicts

### V.     CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Request for a Temporary Restraining Order. (ECF No. 16.)

**IT IS SO ORDERED.**

November 19, 2019

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**